[Cite as *In re C.M.*, 2022-Ohio-4707.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: C.M. | JUDGES:<br>Hon. Earle E. Wise, Jr., P.J.<br>Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J.<br><br>Case Nos. 2022 CA 00029 &<br>2022 CA 00030<br><br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Fairfield County Court of Common Pleas, Juvenile Division Case No. 2021 AB 35 |
| | |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 27, 2022 |
| | |
| APPEARANCES: | |

| | |
|---|---|
| For Appellee - State of Ohio | For Appellant – J.M. (Father) |
| | |
| R. KYLE WITT<br>Fairfield County Prosecuting Attorney | DAVID TAWNEY<br>117 West Main Street – Suite #208<br>Lancaster, Ohio 43130 |
| | |
| GENYLYNN COSGROVE<br>Assistant Prosecuting Attorney<br>239 West Main Street – Suite #101<br>Lancaster, Ohio 43130 | For Appellant – M.M. (Mother)<br><br>WILLIAM HOLT<br>2140 Lancaster-Newark Road, N.E.<br>Lancaster, Ohio 43130 |

Guardian ad Litem                          For C.M.

THOMAS GORDON                        ROSSIA MERANDA
3135 Sun Valley Drive                     33 West Main Street
Pickerington, Ohio 43147               Newark, Ohio 43055

*Hoffman, J.*

{¶1}   In Fairfield App. No. 22CA29, appellant JM ("Father") appeals the July 8, 2022 Judgment Entry/Orders on Objection to Magistrate's Decision entered by the Fairfield County Court of Common Pleas, Juvenile Division, which overruled his objections to the magistrate's May 18, 2022 decision, upheld said decision, terminated Father's parental rights with respect to his minor child ("the Child"), and granted permanent custody of the Child to appellee Fairfield County Child Protective Services ("FCPS").  In Fairfield App. No. 22CA30, appellant MM ("Mother") appeals the same with respect to the termination of her parental rights as to the Child.

### STATEMENT OF THE CASE AND FACTS

{¶2}   Mother and Father are the biological parents of the Child.  Paternity was presumed as Mother and Father were married at the time of the Child's birth.  On March 16, 2021, FCPS filed a complaint, alleging the Child was dependent and requesting the trial court order protective supervision of the Child to FCPS or, in the alternative, award temporary custody of the Child to FCPS.

{¶3}   FCPS filed the complaint after receiving a report Mother and other adults were using opiates in the family home.  The Child had access to drugs and drug paraphernalia.  The Child was reported to have used an electronic tablet immediately after Mother snorted a substance off of it.  Additional concerns included Mother's sleep patterns interfering with her ability to parent and supervise the Child; the Child being developmentally delayed; the Child missing an excessive number of days of school; and the Child eating food out of a dumpster.  In addition, Mother had a history of involvement with FCPS relative to the Child and another child, who is now an adult.  Father, who had

an extensive criminal history, was incarcerated at the time of the filing of the complaint on drug related charges and was scheduled to be released on September 11, 2022.

{¶4} The trial court conducted a shelter care hearing on March 17, 2021, and placed the Child in the temporary shelter court-ordered protective supervision of FCPS. Following an adjudicatory hearing on May 28, 2021, the trial court found the Child to be dependent and placed the Child in the temporary custody of FCPS. The trial court conducted review hearings on September 15, and December 14, 2021, and maintained the status quo. FCPS filed a motion for permanent custody on February 17, 2022.

{¶5} The trial court conducted a hearing on the motion on May 10, 2022. Father appeared virtually although his attorney was present in the courtroom. Prior to commencement of the hearing, counsel for Parents requested a continuance on behalf of their clients to allow Parents additional time to work on their case plan services. The trial court denied the request, noting, if the facts as testified to at the hearing supported Parents' positions, the trial court would find such and deny FCPS's motion for permanent custody.

{¶6} The following evidence was presented at the hearing:

{¶7} Lacey Carrel, a treatment service coordinator with the Recovery Center, testified she completed an assessment of Mother on June 17, 2021. Although Carrel scheduled a follow-up appointment, Mother did not present for the meeting. Based upon the assessment, Carrel recommended Mother engage in an education group and complete a re-assessment upon completion of the group program. Mother began the education group on July 13, 2021, and completed it on August 17, 2021. Mother failed to attend the scheduled re-assessment appointment on September 1, 2021. Carrel's

attempts to re-engage Mother were unsuccessful. Carrel eventually closed Mother's case.

**{¶8}** Rachel Marshall, an intake supervisor with FCPS, testified FCPS received an initial report regarding the Child on January 21, 2021. The initial concerns were neglect and physical abuse of the Child perpetrated by Mother. FCPS conducted an investigation and, as a result, sought and received a shelter care order. At the time of the investigation, Mother admitted to daily methamphetamine use. Mother completed an on-site screen at the agency, which was positive for methamphetamine, amphetamine, and methylenedioxymethamphetamine ("MDMA"). FCPS implemented a safety plan with Mother's mother, but she was only able to care for the Child for a limited period of time. The initial concerns did not involve Father. Marshall explained Father was incarcerated during the course of FCPS's investigation.

**{¶9}** Austin Miller, a felony probation officer, supervised Father while he was on community control. Miller explained Father had two separate cases, both of which involved drug-related offenses. Father received judicial release in June, 2021. Miller began supervising him in July, 2021, at which time Father failed to report. A warrant was issued and Father was arrested on August 17, 2021. Father served a seven-day jail sentence. He was released on August 24, 2021. Father reported to Miller for two weeks, then failed to report on September 17, 2021.

**{¶10}** Father was arrested on February 10, 2022. Miller subsequently filed a motion to revoke Father's community control based upon the following violations: failure to report on September 17, 2021; failure to maintain total sobriety (Father admitted using methamphetamines on February 24, 2022); and failure to comply with counseling orders

(Father failed to follow the recommendations from Lancaster Recovery Services and was unsuccessfully terminated from counseling). Following a hearing, Father was continued on community control with orders to enter and successfully complete the Northwest Community Corrections Program. Father was engaged in the program at the time of the hearing.

{¶11} Ashton Clark, the ongoing caseworker assigned to the family, detailed Mother and Father's case plan requirements. Mother's case plan required her to meet with her FCPS caseworker in person at least once a month; complete an AOD (alcohol and other drugs) assessment and follow all recommendations; complete a mental health assessment and follow all recommendations; and participate in the random call and screen program through Averhealth. Parent education services were subsequently added to Mother's case plan.

{¶12} Between May, 2021, and September, 2021, Mother successfully met with Clark at least once a month. In October, 2021, Clark had contact with Mother through unannounced face-to-face attempts at her home or through telephone calls. Between November, 2021, and January, 2022, Clark met with Mother either at her home or at the agency. Clark was unable to make contact with Mother in February, and April, 2022.

{¶13} Mother completed her AOD assessment at the Recovery Center. Mother engaged in group counseling as part of a group education class. Upon completion of the group, Mother was to be re-assessed. Mother did not present for the follow-up assessment and was subsequently discharged as of result. Clark stated Mother re-engaged in counseling in March, 2022, through Integrated Services. Mother is involved

in both group and individual counseling, and is compliant with the expectations of her treatment program.

**{¶14}** Clark indicated Mother "was for the most part consistent with her random drug screens," but added "there were periods of time where she was not consistent or did not participate in any random call and screens." Transcript of May 10, 2022 Permanent Custody Hearing at 62. Mother had negative screens from March 24, through June 3, 2021, from June 16, through August 2, 2021, on August 20, 2021, and from September 1, through September 17, 2021. Mother tested positive for methamphetamines on June 7, August 11, August 16, and September 28, 2021, and positive for alcohol on June 13, 2021. Mother did not present for randomly selected screens from October 4, through November 30, 2021. As a result, Mother was discharged from the program. Mother re-engaged in the call and screen program, beginning on March 10, 2022. Mother was consistent with her screens throughout the month of March, 2022, except for one no-show on March 25, 2022. Mother's screens were negative during this period.

**{¶15}** Clark explained, due to the Child's needs, FCPS attempted to engage Mother in parenting education through the Fairfield County Board of Developmental Delays ("FCBDD"). FCBDD did not respond to FCPS's inquiries.

**{¶16}** With respect to Father's case plan, Clark testified Father was required to meet with his FCPS caseworker in person at least once a month; complete an AOD assessment and follow all recommendations; complete a mental health assessment and follow all recommendations; participate in the random call and screen program; parenting education; and complete a batterer intervention assessment.

{¶17} While Father was incarcerated between April and June, 2021, Clark met with Father via video calls. Clark was unable to locate Father from August through November, 2021. Clark met with Father in December, 2021, during Father's visit with the Child. Father declined a private face-to-face meeting with Clark at that time. Clark was unable to locate Father in January, 2022. Between February and April, 2022, Clark met with Father while he was held at the Fairfield County Jail. Clark met with Father at Northwest Community Corrections in May, 2022.

{¶18} Father declined the mental health assessment, telling Clark he did not have any mental health concerns. Father completed his substance AOD at Lancaster Recovery Services. Father's last contact with Lancaster Recovery services was September 8, 2021. He was discharged for noncompliance in October, 2021.

{¶19} Because Clark was unable to locate Father, Father did not engage in the random call and screen program while he was not incarcerated. Father was participating in random screens at the correctional institution. Father initially stated he did not need parenting education, but subsequently agreed to complete any program FCPS recommended. Father was unable to complete parenting education due to his incarceration.

{¶20} FCPS had concerns regarding Father perpetrating violent and controlling behavior towards Mother, and requested he complete a batterer intervention assessment. Due to Clark's inability to locate Father, FCPS was unable to refer him to a provider to complete the assessment.

{¶21} Clark noted FCPS still had concerns regarding Parents. With respect to Father, FCPS continued to have concerns with Father's use of illegal and non-prescribed

substances, his parenting practices, and his potential for violent and controlling behavior towards Mother. With respect to Mother, FCPS continued to have concerns about Mother's ability to maintain long-term sobriety and behavioral changes. FCPS had not been able to assess Mother's current housing situation. Clark opined neither Mother nor Father had remedied the conditions which caused the Child to be removed from their care.

{¶22} Clark described the Child's mental and physical needs. The Child was diagnosed with autism. The Child is considered high-functioning as she is verbal and able to communicate. The Child is currently placed in a licensed foster home. The Child has been with the foster family since March 22, 2021. Clark noted the Child has "adjusted incredibly well." At 69. When the Child was initially placed, there were significant behavioral concerns. The Child threw tantrums, struggled to deescalate, and lied. The Child was not toilet trained although the Child was 8 years old.

{¶23} Clark stated the Child had made significant strides since being placed in the foster home. Clark emphasized the Child deserved permanency. Clark added it is important for the Child to know where she is going to lay her head and where she is going to return to each day, explaining it is important for the Child to have this knowledge given her diagnoses. The Child wishes to be adopted by the foster parents. The Child loves her actual parents and engages well with them.

{¶24} Tom Gordon, the guardian ad litem ("GAL"), testified he submitted a written report recommending permanent custody of the Child be granted to FCPS. The GAL stated Parents failed to remedy the conditions which caused the Child to be removed

from their home.  The testimony presented at the hearing did not change his opinion in favor of granting permanent custody of the Child to FCPS.

**{¶25}** Via Decision filed May 18, 2022, the magistrate recommended Parents' parental rights be terminated and permanent custody of the Child be granted to FCPS. The magistrate found the Child could not and should not be placed with either Mother or Father within a reasonable time.  On May 31, 2022, and June 1, 2022, Father and Mother filed their respective objections to the magistrate's decision.  FCPS filed separate memorandum contra on June 3, and 6, 2022.  Father filed a supplemental memorandum on July 5, 2022.  Mother filed a memorandum in support on July 6, 2022.

**{¶26}** Via Judgment Entry filed July 8, 2022, the trial court overruled Parents' objections and upheld the decision of the magistrate.  The trial court terminated Parents' parental rights and ordered the Child be placed in the permanent custody of FCPS.

**{¶27}** It is from this judgment entry Parents separately appeal.

**{¶28}** In Fairfield App. No. 22CA29, Father raises the following assignments of error:

I. THE TRIAL COURT ERRED IN HAVING A HEARING ON THE LEGAL CUSTODY MOTION TEN MONTHS BEFORE THE STATUTORY DEADLINE FOR THIS MATTER TO BE TRIED BY THE COURT.

II. THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE OF THE TRIAL AS REQUESTED BY THE APPELLANT TO ALLOW ADDITIONAL TIME FOR APPELLANT TO COMPLY WITH THE CASE PLAN.

III. THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILD COULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE LENGTH OF TIME.

**{¶29}** In Fairfield App. No. 22CA30, Mother raises the following assignments of error:

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO SUSTAIN AN ORDER AWARDING PERMANENT CUSTODY OF [THE CHILD] TO FAIRFIELD COUNTY PROTECTIVE SERVICES.

II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN THE APPLICATION OF OHIO REVISED CODE SEC. 2151.414 IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION OF THE UNITED STATES, AND THE DUE PROCESS CLAUSE OF THE OHIO CONSTITUTION.

**{¶30}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

FATHER

I, II

**{¶31}** Because Father's first and second assignments of error challenge the trial court's failure to provide him with additional time to work on his case plan, we shall address said assignments of error together. In his first assignment of error, Father asserts the trial court erred in conducting the hearing on FCPS's motion for permanent custody

ten months before the statutory deadline.  In his second assignment of error, Father contends the trial court erred in denying his motion to continue.

**{¶32}** Although Father does not cite a specific statute in his first assignment of error, we presume Father is referring to the twenty-two month period set forth in R.C. 2151.414(B). This time period is a factor the trial court may consider in determining whether to grant permanent custody, not a prescribed time in which a parent is permitted to work on his or her case plan.

**{¶33}** Once an agency files a motion for permanent custody, the trial court by R.C. 2151.414(A)(2), which provides, in pertinent part:

> The court shall hold a trial court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline.
>
> R.C. 2151.414(A)(2).

**{¶34}** FCPS filed its motion for permanent custody on February 17, 2022.  The trial court conducted the hearing on the motion on May 10, 2022.  As discussed, infra, good cause was not shown for continuing the hearing beyond the 120-day period.

**{¶35}** Juv.R. 23 provides, "Continuances shall be granted only when imperative to secure fair treatment for the parties." "The power of the trial court in a juvenile proceeding to grant or deny a continuance under Juv.R. 23 is quite broad and is reviewed

under an abuse of discretion standard." *In re Jordan B.,* 6th Dist. Lucas No. L–06–1161, 2007–Ohio–2537, ¶ 16. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶36}** Prior to the commencement of the hearing, counsel for both Mother and Father requested a continuance of the hearing in order for their individual clients to have more time to work on their case plans. The trial court advised the parties, "[I]f I hear testimony that I feel if they need more time, I will grant that, but I'm not going to grant the continuance ahead of time." Tr. at 9.

**{¶37}** The testimony established, throughout the pendency of the matter, Father was either incarcerated or otherwise avoided interaction with FCPS. Father was incarcerated between April and June, 2021. FCPS was unable to locate Father from August through November, 2021, and again in January, 2022. Between February and April, 2022, Father was held at the Fairfield County Jail, and was subsequently transferred to Northwest Community Corrections.

**{¶38}** Father's actions while the case was pending belie his position he needed additional time to work on his case plan. Father took few, if any, steps towards completing his case plan when he was out of jail. There was no record evidence to suggest he would comply should he be given additional time.

**{¶39}** Accordingly, we find the trial court did not err in conducting the permanent custody hearing before any alleged statutory deadline. We further find the trial court did not abuse its discretion in denying Father's request for a continuance.

**{¶40}** Father's first and second assignments of error are overruled.

FATHER

III

MOTHER

I, II

{¶41} We elect to address Father's third assignment of error and Mother's first and second assignments of error together.  In his third assignment of error, Father argues the trial court erred in finding the Child could not be placed with Father within a reasonable time or should not be placed with Father.  In her first assignment of error, Mother maintains the trial court erred in finding there was sufficient evidence to support its decision to award permanent custody of the Child to FCPS.  In her second assignment of error, Mother submits the trial court violated her due process rights in its application of R.C. 2151.414.

{¶42} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

{¶43} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child

placing agency that has temporary custody of the child or has placed the child in long term foster care.

{¶44} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶45} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶46} We find there was sufficient and substantial competent evidence to support the trial court's grant of permanent custody to FCPS.

{¶47} Father's case plan required him to meet with his FCPS caseworker in person at least once a month; complete an AOD assessment and follow all recommendations; complete a mental health assessment and follow all

recommendations; participate in the random call and screen program; parenting education; and complete a batterer intervention assessment.    Father was incarceration in Fairfield County Jail between April and June, 2021, and February and April, 2022.  Clark met with Father during these periods and in May, 2022, when Father was incarcerated at the Northwest Correctional Institution. Clark was unable to locate Father from August through November, 2021, and then again in January, 2022.  Clark met with Father in December, 2021, during Father's visit with the Child.

{¶48} Father declined the mental health assessment, denying he had any mental health concerns.    Father completed his AOD assessment at Lancaster Recovery Services, but was discharged for noncompliance in October, 2021. Because FCPS was unable to locate Father, Father did not engage in the random call and screen program while he was not incarcerated.  Father initially stated he did not need parenting education, but subsequently agreed to participate in a program.  However, Father was unable to complete parenting education due to his incarceration. Father was asked to complete a batterer intervention assessment after FCPS learned Father had perpetrated violent and controlling behavior towards Mother.  Because FCPS could not locate Father, he was not referred for services.

{¶49} Mother's case plan required her to meet with her FCPS caseworker in person at least once a month; complete an AOD assessment and follow all recommendations;    complete    a    mental    health    assessment    and    follow    all recommendations; participate in the random call and screen program; and participate in parent education services.

{¶50} Mother met with Clark each month from May, 2021, through January, 2022. These meetings were either in person or through telephone calls. Mother did not meet with Clark in February, and April, 2022. Mother completed her AOD assessment at the Recovery Center and engaged in group counseling. Mother completed the group counseling, but failed to present for her reassessment and was subsequently discharged. Mother re-engaged in counseling in March, 2022, and was involved in both group and individual counseling and was compliant with her treatment plan.

{¶51} Mother had negative drug screens from March 24, through June 3, 2021, from June 16, through August 2, 2021, on August 20, 2021, and from September 1, through September 17, 2021. Mother tested positive for methamphetamines on June 7, August 11, August 16, and September 28, 2021, and positive for alcohol on June 13, 2021. Mother did not present for randomly selected screens from October 4, through November 30, 2021, and was discharged as a result. Mother re-engaged in the call and screen program, beginning on March 10, 2022. Mother was consistent with her screens throughout the month of March, 2022, except for one no-show on March 25, 2022. Mother's screens were negative during this period. FCPS attempted to engage Mother in parenting education through FCBDD, but FCBDD did not respond to FCPS's inquiries.

{¶52} The record establishes the following with respect to best interest. The Child is mildly autistic and considered high-functioning. The Child is verbal and able to communicate. The Child has been in the same foster home since March 22, 2021, and has adjusted well. When the Child was initially placed, there were significant behavioral concerns. The Child threw tantrums, struggled to deescalate, and lied. The Child was not toilet trained. The Child had made significant strides in foster placement. Clark testified

the Child deserved permanency, adding it was important, given her diagnoses, for the Child to know where she was going to lay her head and where she was going to return to each day. The Child wishes to be adopted by the foster parents. The Child loves Parents and engages well with them.

{¶53} Mother makes a blanket assertion the trial court violated her due process rights in its application of R.C. 2151.414. We have thoroughly reviewed the entire record in this matter, including a reading of the complete transcript, and find no violation of Mother's due process rights. The trial court complied with the procedures set forth in R.C. 2151.414.

{¶54} Based upon the foregoing, we find the trial court's decision to grant permanent custody of the Child to FCPS is not against the manifest weight of the evidence. We also find the trial court's findings the Child could not and should not be placed with Parents within a reasonable period of time and it was in the Child's best interest to grant permanent custody to FCPS are not against the manifest weight of the evidence.

**{¶55}** Father's third assignment of error, and Mother's first and second assignments of error are overruled.

**{¶56}** The judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Hoffman, J.

Wise, Earle, P.J.  and

Delaney, J. concur